## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAYLA JOHNSON, on behalf of herself and all others similarly situated,<br><br>                              Plaintiff,<br>        v.<br><br>ALLY FINANCIAL INC.,<br><br>                              Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Jayla Johnson ("Plaintiff"), individually and on behalf of all other persons similarly situated, brings this action against Ally Financial Inc. ("Defendant") to enjoin Defendant's practice of making unsolicited and unlawful debt collection calls to the cellular telephones of persons nationwide and for damages for all persons injured by its willful violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA") and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA"). Plaintiff's allegations are based on personal knowledge, as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### INTRODUCTION

1.      Defendant is a debt collection company that conducts wide scale debt collection campaigns in which it has repeatedly made unsolicited calls to individuals' cellular telephones without consent and in violation of the TCPA. Defendant made numerous unauthorized calls to Plaintiff's cellular telephone using an automatic telephone dialing system ("ATDS") or an artificial or pre-recorded voice for the purpose of collecting a debt from a party other than Plaintiff. Defendant does not verify the accuracy of consumers' contact information or "scrub" cellular telephone numbers using publicly available reassigned number lists. Defendant also

called Plaintiff after she clearly stated she did not wish to be called again.

2.      Defendant also made repeated telephone calls in an effort to collect a debt, which resulted in harassment to the callers and/or which were made with the intent to annoy, abuse or harass the called party in violation of the FDCPA.  For example, Defendant repeatedly called Plaintiff in an effort to collect a debt and continued to call Plaintiff after being informed that the actual debtor could not be reached at that number and after Plaintiff requested that Defendant stop calling her.

3.      By making the telephone calls at issue in this Complaint, Defendant caused Plaintiff and the members of a proposed Class of persons (defined below) actual harm, including the aggravation, nuisance and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing telephone calls, as well as the monies paid to their carriers for the receipt of such telephone calls.

4.      The TCPA was enacted to protect consumers from unsolicited telephone calls like those alleged in this case.  Plaintiff seeks an injunction requiring Defendant to cease all calling activities in violation of the TCPA and an award of statutory damages to the members of the Class under the TCPA, together with interest and treble damages (for knowing and/or willful violations), among other relief.

5.      The FDCPA was enacted to, among other things, eliminate abusive debt collection practices by debt collectors and insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged.  Plaintiff seeks an award of statutory damages to the members of the FDCPA Subclass (defined below) under the FDCPA, including an award of statutory damages pursuant to 15 U.S.C. § 1692k, together with interest and reasonable attorneys' fees, among other relief.

## PARTIES

6.      Plaintiff Jayla Johnson is a citizen of Pennsylvania and resides in Harrisburg, Pennsylvania.

7.      Defendant Ally Financial Inc. is a corporation organized under the laws of the State of Delaware.  Defendant maintains its principal office at 200 Renaissance Center, Detroit, Michigan 48243.

8.      Defendant is engaged in the collection of debts from consumers using the telephone, among other means.  Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

9.      Whenever in this Complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, principals, employees or agents committed such act or omission and that at the time such act or omission was committed, it was done with the authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, principals, employees or agents.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the federal statutes known as the TCPA and the FDCPA.

11.      This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy in this civil action exceeds the sum or value of $5,000,000.00, exclusive of interests and costs, and at least one member of the putative class is a citizen of a state different from Defendant.  Furthermore, the Class consists of at least one hundred members.

12.     The Court has personal jurisdiction over Defendant because it conducts significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.  Furthermore, Defendant has purposefully availed itself of the protections of Pennsylvania law, and the exercise of personal jurisdiction over Defendant in this District does not offend traditional notions of fair play or substantial justice.  For these same reasons, venue is proper in this District.

**CERTAIN BACKGROUND INFORMATION CONCERNING THE TCPA**

13.     Congress enacted the TCPA in 1991 to address certain practices thought to be an invasion of consumer privacy and a risk to public safety.  The TCPA, along with the rules and regulations of the Federal Communications Commission ("FCC") to implement the Act, prohibit, among other things, making any non-emergency call using an ATDS or an artificial or prerecorded voice to a cellular telephone number without prior express consent.  The TCPA grants consumers a private right of action, with a provision for $500 or the actual monetary loss in damages for each violation, whichever is greater, and treble damages for each willful or knowing violation, as well as injunctive relief.

14.     Since the TCPA's passage in 1991, the FCC has taken multiple actions implementing and interpreting the TCPA, and has issued numerous Declaratory Rulings clarifying specific aspects of the TCPA.  The most recent FCC Order, dated July 10, 2015 provided further protection to consumers by, among other things, clarifying that ATDS is broadly defined, confirming liability attaches to calls made to the wrong number or reassigned number, and clarifying consumers may revoke consent through reasonable methods.  *In re Rules and Regs. Implementing the TCPA*, 30 F.C.C.R. 7961 (July 10, 2015).  This Order defines an "autodialer" as equipment/software that has the future capacity to dial randomly or sequentially.

In other words, the capacity of an autodialer is not limited to its current configuration but also includes its potential functionalities.

15.     The Order also states that calls placed to the wrong number or a reassigned number are made with knowledge of the error after the first call; and consumers may revoke consent through any reasonable method, including orally: "[w]e clarify, however, that callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber.  If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such"; "[c]onsumers generally may revoke, for example, by way of a consumer-initiated call, directly in response to a call initiated or made by a caller, or at an in-store bill payment location, among other possibilities." *Id.*, 30 F.C.C.R. 7961, 7996, 8000.

16.     Also, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules."  *In re Rules and Regs. Implementing the TCPA*, 23 F.C.C.R. 559, 565 (Jan. 4, 2008).  Accordingly, Defendant can be liable under the TCPA for a call made on its behalf, even if the Defendant did not directly place the call.  Under those circumstances, Defendant is deemed to have initiated the call through the person or entity that placed the call.

## COMMON FACTUAL ALLEGATIONS

17.     Defendant is a debt collector that engages in improper debt collection practices that violate the statutorily protected rights of called parties.

18.     Plaintiff brings the present action because Defendant has repeatedly violated the

TCPA by calling Plaintiff and the Class using ATDS and/or artificial or pre-recorded voice, without prior express consent.  As further detailed herein, Plaintiff was not the debtor Defendant was looking for when Defendant made unsolicited calls to her cell phones.  Defendant knowingly and willfully engaged in violations of the TCPA.

19.     Defendant has also repeatedly violated the FDCPA by engaging in conduct the natural consequence of which was to harass, oppress or abuse Plaintiff and the Class in connection with the collection of a debt.  In particular, Defendant made repeated calls to Plaintiff and the Class.  Defendant also violated FDCPA by making repeated calls with the intent to annoy, abuse or harass Plaintiff and the Class.

**FACTS SPECIFIC TO PLAINTIFF JAYLA JOHNSON**

20.     Beginning in or about September 2015, Plaintiff received calls from the telephone numbers 888-650-4831, 888-803-3174, and 888-282-3139, which are associated with Defendant. Plaintiff has thus far received at least 34 unsolicited and harassing calls from Defendant.

21.     Defendant's calls were collection calls on a consumer debt that does not belong to, was not incurred by and is not the responsibility of Plaintiff.

22.     Plaintiff received the calls described above on her cellular telephone, which is assigned a number ending in 0150.

23.     Defendant placed its calls to Plaintiff using an ATDS and/or artificial or pre-recorded voice, without first obtaining Plaintiff's prior express consent.

24.     Plaintiff was able to answer several of these calls and interact with the caller's live representative after being transferred by the dialing system.

25.     When Plaintiff answered Defendant's calls, there was a momentary pause ("dead air") before Defendant's live representative engaged on the other end of the line.  In some

instances, Plaintiff's greeting was met only with silence and nobody ever engaged her on the other end of the line.

26.     During the calls Defendant made to Plaintiff, Plaintiff could hear background noise she associated with "call center" chatter as the live representative spoke.

27.     During the calls Defendant made to Plaintiff, Defendant's representatives asked for another individual, "William," not Plaintiff.

28.     During the calls Defendant made to Plaintiff, Plaintiff repeatedly told Defendant that it had the wrong party.  Yet, Defendant continued to make unsolicited and harassing calls to Plaintiff.

29.     Plaintiff never provided Defendant with consent to call her for any purpose.

30.     At the time of the calls Defendant made to Plaintiff, Plaintiff did not have a business relationship with Defendant.

31.     Defendant's calls to Plaintiff were an invasion of her privacy and she asked Defendant to stop calling.   Defendant, however, ignored Plaintiff's multiple requests and continued to call her.

32.     Based on the circumstances of the calls (*e.g.*, dead air, "call center" noise, large volume of calls, no response to her greeting), Plaintiff believes Defendant called her cellular telephone using an ATDS that mechanically selected her number from a computer database.

33.     On information and belief, Defendant used an ATDS and/or an artificial or prerecorded voice to call Plaintiff on every occasion.

34.     The telephone number Defendant called was assigned to a cellular telephone service for which charges incur for incoming calls.

35.    Plaintiff is the exclusive user of her cellular telephone (with a number ending in 0150).

36.    Defendant's calls constituted calls that were not for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A).

37.    Plaintiff did not provide Defendant with prior express consent to place calls to her cellular telephone utilizing an ATDS or artificial or pre-recorded voice.

## CLASS ACTION ALLEGATIONS

38.    Plaintiff brings this proposed class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of herself and the following three subclasses (collectively, the "Class"):

**Autodialer Subclass:**  All persons in the United States who received a call to the their cellular telephone made by or on behalf of Defendant through the use of an ATDS or any other device having the capacity to dial numbers without human intervention or an artificial or prerecorded voice, from June 9, 2012 through the date on which the Subclass is certified, where Defendant's business records fail to demonstrate prior express consent from the recipient for the call made.

**Wrong Number Subclass:**  All persons in the United States whose (1) cellular telephone number has been called by Defendant; (2) more than once; (3) from June 9, 2012 through the date on which the Subclass is certified; (4) through the use of an ATDS or any other device having the capacity to dial numbers without human intervention or an artificial or prerecorded voice; and (5) such calls were "wrong numbers" where the person subscribing to the number called was not the same person Defendant's records show it intended to call.

**FDCPA Subclass:**  All persons in the United States whose (1) cellular telephone number has been called by Defendant; (2) more than once; (3) from June 9, 2015 through the date on which the Subclass is certified; (4) through the use of an ATDS or any other device having the capacity to dial numbers without human intervention or an artificial or prerecorded voice; and (5) such calls were "wrong numbers" where the person subscribing to the number called was not the same person Defendant's records show it intended to call.

39.     The following are excluded from the Class: (1) Defendant; (2) any affiliate of Defendant; (3) any employee of Defendant; (4) those persons who file a timely and valid request to be excluded from the Class; and (5) the legal representatives, heirs, successors and assigns of any such excluded person or entity.

40.     Plaintiff and other members of the Class were harmed by Defendant's acts in at least the following ways:  Defendant, either directly or through agents, unlawfully contacted Class members *via* their cellular telephones by using an ATDS and/or an artificial or prerecorded voice, thereby causing Class members to incur certain cellular telephone charges or reduced cellular telephone time for they previously paid; continuing to call Class members after they requested the calls cease; and invading the privacy of Plaintiff and the Class members.

A.      NUMEROSITY

41.     Plaintiff believes that the members of the Class are so numerous that joinder of all members is impracticable and that they are geographically dispersed.  Class Members can be easily identified through Defendant's business records.

B.      COMMONALITY AND PREDOMINANCE

42.     There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class.

43.     Common questions for the Class include, but are not necessarily limited to the following:

        a.      Whether Defendant's conduct violated the TCPA;

        b.      Whether Defendant's conduct violated the FDCPA;

        c.      Whether Defendant made calls, through the use of an ATDS or any other device having the capacity to dial numbers without human intervention or

9

an artificial or prerecorded voice, to consumers who did not previously provide Defendant with prior express consent to receive such phone calls;

d.       Whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct;

e.       Whether Defendant called consumers with re-assigned numbers that appear on publicly available databases or re-assigned numbers.

f.       Whether Defendant placed calls to consumers after those consumers requested Defendant stop calling; and

g.       Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

## C.   TYPICALITY

44.    Plaintiff's claims are typical of the claims of the other members of the Class.

45.    Plaintiff and the Class sustained damages as a result of Defendant's uniform and wrongful conduct in directing communications to Plaintiff and the Class in violation of the TCPA and FDCPA.

## D.   ADEQUATE REPRESENTATION

46.    Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions.

47.    Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

## E.   POLICIES GENERALLY APPLICABLE TO THE CLASS

48.    This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Class as a whole.

49.    Defendant's practices challenged herein apply to and affect the Class members

uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

F.  SUPERIORITY

50.  This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable.

51.  The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions.

52.  Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct.

53.  Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.

54.  By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
**(Violation of the TCPA, 47 U.S.C. § 227)**

55.  Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

56.     This claim is brought on behalf of Plaintiff, the Autodialer Subclass and the Wrong Number Subclass.

57.     The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227 and 47 C.F.R. § 64.1200, *et seq.*

58.     As a result of Defendant's violations of 47 U.S.C. § 227 and 47 C.F.R. § 64.1200, *et seq.,* Plaintiff and the other members of the Class are entitled to an award of $500.00 in statutory damages, for each and every violation of the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(B).

59.     Plaintiff and the other members of the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future, pursuant to 47 U.S.C. § 227(b)(3)(A).

## SECOND CAUSE OF ACTION
### (Knowing and/or Willful Violation of the TCPA, 47 U.S.C. § 227)

60.     Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

61.     This claim is brought on behalf of Plaintiff, the Autodialer Subclass and the Wrong Number Subclass.

62.     The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227 and 47 C.F.R. § 64.1200, *et seq.*

63.     As a result of Defendant's violations of 47 U.S.C. § 227 and 47 C.F.R. § 64.1200, *et seq.* Plaintiff and the other members of the Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3).

64.     Plaintiff and the other members of the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future, pursuant to 47 U.S.C. § 227(b)(3)(A).

### THIRD CAUSE OF ACTION
### (Violation of the FDCPA, 15 U.S.C. § 1692, *et seq.*)

65.     Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

66.     This claim is brought on behalf of Plaintiff and the FDCPA Subclass.

67.     At all times relevant hereto, Defendant was attempting to collect a "debt" as defined by 15 U.S.C. § 1692a(5).

68.     The foregoing acts and omissions constitute violations of the FDCPA, including but not limited to, violations of 15 U.S.C. § 1692d (any conduct the natural consequence of which is to harass, oppress or abuse any person) and 15 U.S.C. § 1692d(5) (causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse or harass any person at the called number).

69.     As a result of Defendant's violations of 15 U.S.C. §§ 1692d and 1692d(5), Plaintiff and the other members of the FDCPA Subclass are entitled to statutory damages, reasonable attorney fees and other relief, pursuant to 15 U.S.C. § 1692k.

### JURY DEMAND

70.     Plaintiff, individually and on behalf of the Class, demands a jury trial on all issues triable to a jury.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for relief and judgment as follows:

A.      Determining that this action is a proper class action and certifying Plaintiff as Class representative under Rule 23 of the Federal Rules of Civil Procedure;

B.      Awarding statutory, treble and other damages to the full extent permitted by law in favor of Plaintiff and the other members of the Class against Defendant, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees to the full extent permitted by law; and

D.      Any other relief that the Court deems just and proper.

Dated:  June 9, 2016

Respectfully submitted,

Shanon J. Carson (Pa. Bar No. 85957)
Arthur Stock (Pa. Bar No. 64336)
Lane L. Vines (Pa. Bar No. 80854)
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA  19103
Tel.:  (215) 875-3000
Fax:  (215) 875-4604
scarson@bm.net
astock@bm.net
lvines@bm.net

-- and --

W. Craft Hughes
Jarrett L. Ellzey
Hughes Ellzey, LLP
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX  77056
Tel.:  (713) 554-2377
Fax:  (888) 995-3335
craft@hughesellzey.com
jarrett@hughesellzey.com

*Attorneys for Plaintiff and the
Proposed Class*